UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRINA HALL,<br><br>    Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 17-cv-02161-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: ECF No. 42 |

Before the Court is Defendants' motion to dismiss the first amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 42. The Court will grant the motion in part and deny it in part.

**I.  BACKGROUND**

Plaintiff Patrina Hall, an African American who resides in San Francisco, brings this suit against Defendants City and County of San Francisco; Kevin Ian Kitchingham, project manager; Brian Cheu, director of community development; and Emily Cohen, Office of the Mayor. She is proceeding pro se. Her first amended complaint[1] alleges the following:

San Francisco "created and instituted local government Black Codes, necessary to refuse equal access to economic opportunities available to all citizens." ECF No. 11-4 at 5. Defendants "interfered with the Plaintiff's federal and statutory rights by hiring and according economic opportunities to people of color (mulattoes and Latinos) and presenting as black people (African Americans) for the purpose of disfranchising black people and the promotion of City, policing of a radical order (black codes)." Id. at 7.

---

[1] Hall filed an amended complaint ten days after filing her original complaint and before serving it on Defendants. See ECF Nos. 1, 11. The amendment was proper as a matter of course under Federal Rule of Civil Procedure 15(a)(1).

The San Francisco Board of Supervisors appointed Hall to a two-year term on the Citizen's Committee on Community Development, headed by Cheu. Id. at 2. Cheu "refus[ed] her votes on issues important to committee work" and also informed Hall "that San Francisco no longer acknowledge[s] black communities, since such communities [have] been dissolved, and replaced by communities of color." Id. at 2-3. Cheu "also stated that the City was a sanctuary city, and was only interested in providing City funds to people of color (Asians, Latinos and mulattoes)," and that "the City would provide economic opportunities to black people according to the black population residing within San Francisco, . . . a near six-percent of the City's population." Id. at 3.

Cheu also informed Hall that her nonprofit organization "did not qualify to receive City funding because [she] was black (African American)[,] had slave [descendant] status, and could not enter into a contract with the City and County of San Francisco." Id. Cheu suggested that Hall speak with Kitchingham, which Hall did in 2017 regarding "procuring City land, necessary to build an affordable housing development, to house [formerly] homeless individuals and families." Id. Kitchingham told Hall that her organization could not procure City land because Hall "was black (African [descent])," that "the City did not award City property to black people," and that "he and the City was only interested in awarding City land to Latinos and other people of color, with the exclusion of black people." Id. at 3-4. Hall "has made various attempts at securing grant funding to facilitate the programs, services and activities of the nonprofit corporation she promotes, but to no avail[.] Plaintiff has been denied such opportunities because of her race, color, national origin and status of a United States black slave [descendant] of African slaves." Id. at 10. Moreover, grant funding is awarded disproportionately "to nonprofits in black communities," as opposed to those "serving white communities and communities of color (Latino, Asian, mulattos)," both as to the number and amount of awards. Id. at 15-16.

Several times in 2017, Hall asked Cohen, a Department of Homelessness and Supportive Housing employee, about job opportunities in that department. Id. at 4. Cohen responded that the City "did not have any hiring plans that were inclusive of black people (African Americans)," and that "her department (the City) awards grant funding to nonprofit organizations, and they hire who they want to hire." Id. Hall "has made several attempts at securing employment with the City and

County of San Francisco, but to no avail . . . because of her race, color, national origin and her status of a United States black slave [descendant] of African slaves." Id. at 10.

Hall "conduct[ed] a pre-litigation investigation of San Francisco's hiring practices. And the results revealed that the City hires black people according to their representation of the City's population." Id. at 13. The City "do[es] not ask the race of potential job applicants, but instead hires mulattos and other people of color and will designate . . . [them] as black (African American." Id. "[A] fraction of mulatto employees are frequent users of black skin dye, and wear[] it to work on a [consistent] basis." Id. at 14. Hall's pre-litigation investigation of five City departments and agencies "revealed that black (African American) employees had unequal access to different kinds of labor activities that are associated with lower-wage earning, while white and people of color (mulattos, Asians and Latinos) were employed in positions and labor activities with higher wage earnings." Id. at 15.

Hall has also suffered discrimination on public transit: For example, "[w]hen Plaintiff access[es] public transit, the transit operator(s) (either people of color or white) direct Plaintiff to the back of the bus, and most often state that the front seats or the front section of the bus is where people of color and white citizens sit or stand at." Id. at 12. In addition, "the people of color and white public transit patrons demand that black people (African Americans) do not sit in an empty seat next to them. When they enter the bus, and see black patrons sitting next to a vacant seat, they push the black public transit patrons off the seat." Id. at 13.

In addition, Defendants "segregate the public schools during the summer months (with the exclusion of black children and staff) for pay, necessary to promote all Asian schools, all Latino schools, and all white schools." Id. at 14.

As a result of the conduct alleged in the complaint, Hall has "suffered injuries to her physical health, finances and reputation." Id. at 10-11.

Hall's first amended complaint lists eight claims:[2] (1) employment discrimination; (2) discrimination in grant funding; (3) discrimination in refusing "votes on issues important to

---

[2] The claims are numbered 1 through 7, but two claims are numbered "6." ECF No. 11-4 at 19-20.

3

committee business"; (4) violation of civil rights "by excluding and dissolving black communities into communities of color (Asians, Latinos, mulattos) with the exclusion of black people (African Americans) in regards to socioeconomic funding activities and housing programs"; (5) violation of civil rights by "politically exclud[ing Hall] from contracting with the City because of her race, color, national origin and status of a black slave (African American) [descendant]"; (6) violation of civil rights "by implementing City sanctioned black codes"; (7) violation of civil rights "by [dismantling] black communities (African American) necessary to construct and fund communities of color, for the purpose of politically incorporating others, people of color (mulattos, Asians, and Latinos)"; and (8) violation of civil rights "by not having an inclusive staffing plan with employment positions available to black applicants (African Americans)." Id. at 17-21. She asserts these claims under several federal statutes, including 18 U.S.C. § 242; 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3); Titles II, VI, and VII of the Civil Rights Act of 1964; and the Civil Rights Reform Act of 1978. Id. at 5-9, 11, 17-22.

## II. REQUESTS FOR JUDICIAL NOTICE AND LATE-FILED DOCUMENTS

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." On a motion to dismiss, the court may also "consider materials incorporated into the complaint" when "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). This is true even if "the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). However, courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC, No. 16-CV-06499-DMR, 2017 WL 3136443, at *5 (N.D. Cal. July 24, 2017); see also Lee v. City of Los

4

Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001) (courts may not take judicial notice of disputed facts stated in public records).

Defendants ask the Court to take judicial notice of a public notice, entitled "Title VI Discrimination and Complaints," from the San Francisco Municipal Transportation Agency's ("SFMTA's") website. ECF No. 42-1. The Court grants Defendants' request because the notice "was made publicly available by government entities . . ., and neither party disputes the authenticity of the web site[] or the accuracy of the information displayed therein."[3] Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010). Based on the allegations in the complaint, Hall would dispute the truth of the statement that the SFMTA actually "is committed to operating its programs and services without regard to race, color or national origin." ECF No. 42-1 at 5. But the Court takes judicial notice only of the existence of the notice, not of the truth of any matters asserted therein.

Hall seeks judicial notice of multiple documents: an email notice that her name was reached as an alternate for a probation officer assistant position (Ex. A); a list of employment applications she submitted to the City (Ex. B); a facilities use permit application from the San Francisco Unified School District (Ex. C); a letter from the Equal Employment Opportunity Commission ("EEOC") (Exs. D & F);[4] a handwritten list of agencies Hall contacted (Ex. E); a letter from the San Francisco Human Rights Commission (Ex. G); a certified motion approving that Hall was appointed to the Citizen's Committee on Community Development (Ex. H); a denial of Hall's claim from the Office of the City Attorney (Ex. I); a certificate of service in this case, ECF No. 7-1 (Ex. J); the order granting Hall's application to proceed in forma pauperis in this case, ECF No. 6 (Ex. K); a notice of receipt of a complaint from the EEOC (Ex. L); and a notice of receipt and right-to-sue letter from the California Department of Fair Employment and Housing ("DFEH") (Ex. M). ECF Nos. 50, 52. Defendants argue that none of these documents are

---

[3] Hall's purported objection to Defendants' request for judicial notice, ECF No. 47, argues only that Hall does not need to exhaust administrative remedies, not that judicial notice of the document would be improper.

[4] Hall submitted two copies of the same letter.

relevant to evaluating the sufficiency of Hall's complaint, but they do not dispute that the exhibits are judicially noticeable except for Exhibit B. The Court does not take judicial notice of Exhibit B because Defendants dispute the exhibit's authenticity. The Court also does not take judicial notice of Exhibit E because the accuracy of handwritten notes can be reasonably questioned. See Fed. R. Civ. P. 201(b)(2) (judicial notice is proper only where the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). The Court takes judicial notice of the other exhibits because Defendants do not contest their authenticity and they are not completely irrelevant to Hall's claims.

After Defendants filed their reply, Hall filed a request for judicial notice of three additional documents, ECF No. 57, as well as a "reply" to Defendants' reply, ECF No. 58. Civil Local Rule 7-3(d) provides that, "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval," except to object to reply evidence or to provide a statement of recent decision. Neither exception applies here, and Hall did not obtain approval from the Court to file either document. "[C]ourts are required to afford pro se litigants additional leniency," but such leniency "does *not* extend to permitting surreplies as a matter of course." Garcia v. Biter, 195 F. Supp. 3d 1131, 1134 (E.D. Cal. 2016). Defendants' reply in this case raised no new arguments and presented no evidence, and the Court does not find good cause to allow Hall to file a sur-reply or a subsequent request for judicial notice. Accordingly, neither ECF No. 57 nor ECF No. 58 will be considered.

### III. LEGAL STANDARDS

#### A. Federal Rule of Civil Procedure 12(b)(1)

To have Article III standing to sue, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). If a plaintiff lacks standing, the federal court lacks subject matter jurisdiction and the suit must be dismissed under Federal Rule of Civil Procedure 12(b)(1). Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on

6

their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). Where, as here, the defendant makes a facial attack, the court assumes that the complaint's allegations are true and draws all reasonable inferences in the plaintiff's favor. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

**B.     Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. Knievel, 393 F.3d at 1072.

Courts "construe pro se complaints liberally, especially in civil rights cases." Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014). "However, a liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id. (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992) (internal quotation marks and brackets omitted)).

/ / /

## IV. DISCUSSION

### A. Claims 1 and 8: Employment Discrimination

Hall's first and eighth causes of action challenge the City's hiring practices. She has standing to challenge these practices only to the extent that she was personally injured. Braunstein v. Ariz. Dep't of Transp., 683 F.3d 1177, 1185 (9th Cir. 2012) ("Even if the government has discriminated on the basis of race, only those who are 'personally denied' equal treatment have a cognizable injury under Article III.").

"Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge."[5] B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002) (citing 42 U.S.C. § 2000e-5(b)). Here, the complaint does not allege the filing of any administrative charges. Hall's opposition presents letters from the EEOC and the DFEH, both dated August 18, 2017, noting the filing of such charges. ECF No. 52 at 6, 9. But only the DFEH has issued a right-to-sue letter. That letter provides the right to sue under the state Fair Employment and Housing Act, and not under federal law, as Hall seeks to do here. Id. at 9. The DFEH letter further explains that, "[t]he EEOC is responsible for the processing of this complaint and the DFEH will not be conducting an investigation into this matter." Id. Hall does not appear to have received a right-to-sue letter from the EEOC, nor has she presented any argument as to why that requirement should be excused. See Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1105 (9th Cir. 2008) (explaining that the "general requirement of a federal right-to-sue letter" may be excused where "a plaintiff is entitled to receive a right-to-sue letter from the EEOC" because, for example, "the EEOC did not timely act on her properly filed charge," and the plaintiff "has received a right-to-sue letter from the appropriate state agency"). Her employment discrimination claims are therefore dismissed for failure to exhaust her administrative remedies.

In addition, Hall's allegations concerning Defendant Cohen's comments are not sufficient

---

[5] Hall argues that she did not have to exhaust her administrative remedies, but the case she cites relates to Title IX, which is not at issue in this case. ECF No. 46 at 4 (citing Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255 (2009)).

8

to state a claim for employment discrimination. She contends that Cohen stated that the City "did not have any hiring plans that were inclusive of black people (African Americans)," ECF No. 11-4 at 4, but she does not allege that Cohen was the decisionmaker for any hiring decisions, or that her alleged comment had any nexus with any decisionmaker. This is insufficient to establish discriminatory intent. Vasquez v. Cty. of Los Angeles, 349 F.3d 634, 640-41 (9th Cir. 2003), as amended (Jan. 2, 2004); see also Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) ("statements by nondecisionmakers" insufficient to establish prima facie case of discrimination).

Hall also asserts that she "has made several attempts at securing employment with the City and County of San Francisco," ECF No. 11-4 at 4, but this statement is too vague to put Defendants on fair notice of Hall's claim. If Hall amends her claims after receiving a right-to-sue letter from the EEOC, she must include additional factual allegations, such as which positions she applied for and when. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (finding employment discrimination complaint to be sufficient, in part, because it "provided relevant dates"). She should also consider whether any of her claims are time-barred because she did not file a complaint with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).

Finally, Hall refers to the "Civil Rights Reform Act of 1978" as "prohibit[ing] discrimination in federal employment on the basis of race" and other factors. ECF No. 11-4. She appears to be referring to the Civil Service Reform Act of 1978 but, in any event, does not allege any claims related to federal employment. That Act therefore has no application to this lawsuit.

**B.    Claims 2 and 5: Contracting/Grant Funding**

Hall's second and fifth causes of action allege that the City unlawfully discriminates on the basis of race in its contracting and grant-funding processes.

Defendants argue that these claims must be dismissed for lack of standing, but the Court is not so persuaded on a facial attack. Defendants recognize that, "when the government imposes a discriminatory barrier making it more difficult for members of a group to obtain a benefit (such as a government contract), the injury of unequal opportunity to compete confers standing." Barnes-

9

Wallace v. City of San Diego, 704 F.3d 1067, 1085 (9th Cir. 2012). Defendants also correctly argue that a plaintiff challenging such a barrier must be "able and ready" to compete for the relevant benefit – in this case, the receipt of grant funding and a contract to procure City land for purposes of building affordable housing. Id. (citation omitted). However, the cases on which Defendants rely are all summary judgment cases or, in one case, an opinion reviewing a final judgment. ECF No. 42 at 17-19 (citing Moose Lodge No. 107 v. Irvis, 407 U.S. 163 (1972); Barnes-Wallace, 704 F.3d 1067; Braunstein, 683 F.3d 1177; Carroll v. Nakatani, 342 F.3d 934 (9th Cir. 2003)). These cases do not address the requisite pleading standard for such claims, and Defendants cite no authority for the proposition that the "short and plain statement" of a claim required by Federal Rule of Civil Procedure 8(a)(2) must include detailed allegations of a plaintiff's "qualifications, financing, and experience necessary to be 'able and ready' to bid" on a contract, as Defendants argue here. ECF No. 42 at 19. Hall has alleged that, in 2017, she attempted to obtain grant funding and secure a contract to purchase land to build affordable housing, and that her requests were denied on the basis of her race. Liberally construed in the light most favorable to Hall, this is sufficient to withstand a facial attack on standing. Defendants' motion to dismiss is therefore denied. Defendants may, if appropriate after discovery, make a factual attack challenging Hall's standing to pursue these claims on grounds that Hall was not "able and ready" to compete for the benefits at issue.

As with Hall's employment discrimination claims, Hall has standing to challenge the City's contracting and grant-funding practices only to the extent that she was personally injured. Braunstein, 683 F.3d at 1185.

### C. Claim 3: Committee Voting

Hall's third cause of action is based on her allegations that Defendants "refus[ed] her votes on issues important to committee business on the basis of Plaintiff's skin color, race, national origin, and status of a black slave [descendant] of the United States." ECF No. 11-4 at 18. Defendants acknowledge that Hall can state an equal protection claim under 42 U.S.C. § 1983 if she can "show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." ECF No. 42 at 25 (quoting Barren v.

10

1 Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)).

Hall's allegations on this claim, however, are too conclusory to state a plausible claim for relief. Although she alleges that Defendant Cheu "refus[ed] her votes on issues important to committee work," ECF No. 11-4 at 2, she does not allege that she was treated differently from other similarly situated individuals. For example, she does not allege any matters on which other members of the committee were allowed to vote but she was not. Defendants' motion to dismiss this claim is granted.

### D. Claims 4 and 7: Spending Priorities

Hall's fourth and seventh causes of action challenge the City's discretionary decisions to fund programs that support "communities of color" broadly, and not African-American communities in particular. Defendants move to dismiss these claims on three independent grounds: that Hall lacks standing, that these claims present a political question, and that Hall has failed to allege sufficient facts to state a plausible claim for relief. ECF No. 42 at 19-23. Hall's opposition fails to respond to any of these arguments.

Hall lacks standing to pursue these claims because she has not alleged the required "concrete and particularized" injury and instead alleges "a grievance [she] suffers in some indefinite way in common with people generally." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 344 (2006) (internal quotation marks and citation omitted) (rejecting taxpayer standing). Nor has she shown that any injury would be "likely to be redressed by a favorable judicial decision." Spokeo, 136 S. Ct. at 1547. How to allocate government funds "is the very epitome of a policy judgment committed to the broad and legitimate discretion of lawmakers, which the courts cannot presume either to control or to predict"; thus, it cannot be presumed that a favorable decision to Hall would result in "bolstering programs that benefit [her]." DaimlerChrysler Corp., 547 U.S. at 344-45 (internal quotation marks and citation omitted). These claims raise the sort of "'generalized grievances' . . . [that are] most appropriately addressed in the representative branches." Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 475 (1982) (citation omitted). The Court therefore grants Defendants' motion

1 to dismiss these claims for lack of standing.[6]

### E. Claim 6: "Black Codes"

Hall's sixth cause of action challenges the City's adoption of "Black Codes." Her complaint, however, does not identify any particular "Black Code" or assert any injury that can be fairly traced to these unidentified "codes." In her opposition, Hall cites Monell v. Department of Social Services, 436 U.S. 658 (1978), and asserts that "the City and County of San Francisco instituted custom, practice and policies similar to 'black codes' and failed to publish such policies associated with their agencies and departments within the Federal Register." ECF No. 46 at 9-10. But she still fails to identify any "Black Code" or present any argument as to how she has been injured by these "codes." Nor has Hall asserted any injury based on the City's alleged failure to publish policies in the Federal Register, even assuming that the City had such publishing obligations. These claims are therefore dismissed for lack of standing. See Spokeo, 136 S. Ct. at 1547 (standing requires a plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision").

### F. Other Allegations Raised in the Complaint

Finally, the Court discusses allegations Hall raises in her complaint without tying them to specific causes of action.

#### 1. School Segregation

First, it is unclear under which cause of action Hall seeks to recover for her allegations regarding school segregation. However, these allegations fail to state a claim for relief because they fail to allege any injury to Hall sufficient to confer standing. Moreover, Hall fails to allege that the City or any other named Defendant is responsible for any of the alleged segregation. To the contrary, Hall cites a facilities use permit application that was issued by the San Francisco Unified School District ("SFUSD") and refers to "the use of SFUSD property." ECF No. 50 at 16. See also San Francisco NAACP v. San Francisco Unified Sch. Dist., 484 F. Supp. 657, 662 (N.D.

---

[6] Because Hall lacks standing, the Court does not reach the question of whether these claims present non-justiciable political questions.

Cal. 1979) ("[A]s has been repeatedly held by California courts, the management of public schools in California is a matter of statewide supervision rather than a local concern."). Accordingly, any claims based on allegations of school segregation are dismissed.

### 2. Public Transit

Second, Hall's amended complaint includes allegations concerning public transit. As Defendants correctly observe without any rebuttal from Hall, the complaint alleges discriminatory behavior only by unidentified public transit operators and public transit patrons. Hall alleges no basis for Defendants' responsibility for the conduct of public transit patrons. In addition, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. Hall has failed to allege such a policy or custom of discrimination on public transit.[7] Hall's claims based on public transit are therefore dismissed.

### 3. Conspiracy

Third, Hall's complaint repeatedly refers to 42 U.S.C. § 1985. ECF No. 11-4 at 5-6, 14, 18, 21. Section 1985 prohibits conspiracies to interfere with civil rights. "To state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'" Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation omitted). "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988). Hall has not stated specific facts to support a conspiracy claim, and her claims based on 42 U.S.C. § 1985 are therefore dismissed.

### 4. Violation of 18 U.S.C. § 242

Fourth, Hall's complaint refers to 18 U.S.C. § 242 in two places. ECF No. 11-4 at 11, 22.

---

[7] The Court took judicial notice of an SFMTA public notice stating that the agency "is committed to operating its programs and services without regard to race, color or national origin," but the Court cannot take judicial notice of the truth of that statement. ECF No. 42-1 at 5.

13

However, Section 242 is a criminal statute that "provide[s] no basis for civil liability." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Any claims based on 18 U.S.C. § 242 are dismissed without leave to amend.

## CONCLUSION

Defendants' motion to dismiss Hall's amended complaint is granted in part and denied in part. The motion is denied as to Hall's second and fifth causes of action alleging discrimination in the City's contracting and grant-funding processes. It is granted in all other respects. Dismissal is with leave to amend except as to claims based on 18 U.S.C. § 242, the Civil Service Reform Act of 1978, or the alleged discriminatory treatment of others.

If Hall wishes to amend any of the dismissed claims, she must file a second amended complaint within thirty calendar days of the date of this order.

The Court encourages Hall to seek the assistance of the Legal Help Center in deciding whether to amend her complaint and in proceeding with this litigation more generally. The Legal Help Center has two locations: 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, California, and 1301 Clay Street, 4th Floor, Room 470S, Oakland, California. Assistance is provided at both offices by appointment only. Litigants may schedule an appointment by signing up in the appointment book located on the table outside the door of the Center at either location, or by calling the Legal Help Center appointment line at (415) 782-8982. Hall may also wish to consult the resources for pro se litigants on the Court's website, https://cand.uscourts.gov/pro-se, including the manual, "Representing Yourself in Federal Court: A Handbook for Pro Se Litigants," which can be downloaded at https://cand.uscourts.gov/prosehandbook or obtained free of charge from the Clerk's office.

**IT IS SO ORDERED.**

Dated: November 20, 2017

JON S. TIGAR
United States District Judge